[Civ. No. 4279. Third Appellate District.—May 29, 1931.]

BERTA M. GROSS, Respondent, v. NELS GROSS, Appellant.

Dryer, Castle, McConlogue & Richards for Appellant.

Hunsaker, Britt & Cosgrove, John N. Cramer and Daniel M. Hunsaker for Respondent.

MR. JUSTICE Pro Tem BURROUGHS Delivered the Opinion of the Court.—This action involves the interpretation of a contract. It appears from the record that the plaintiff and the defendant were at one time married and that the issue of said marriage was a daughter named Leonora M. Gross. The plaintiff and defendant were divorced and thereafter by a contract in writing dated September 28, 1922, undertook to settle their property rights. The controversy now before this court, involves the construction of that portion of said contract which provides for the payment by the father of an additional sum of money for the education and maintenance of the daughter Leonora M. Gross. The mother, Berta M. Gross, is the plaintiff in this action and is named in said contract as the party of the second part. The father is the defendant and is designated in the contract as the party of the first part. For a proper understanding of the dispute paragraph two of said contract is herein set out in full as follows:

"2. The party of the first part covenants and agrees to pay to the party of the second part hereto so long as Leonora M. Gross shall remain unmarried and shall continue to live with said Berta M. Gross, the further and additional sum of $200 per month, commencing October 1, 1922; provided, however, that such payments shall cease and any obligation of the party of the first part to make such payments shall terminate upon the death of Berta M. Gross or if said Berta M. Gross shall remarry, then upon her remarriage to Nels Gross or to someone other than said Nels Gross. The party of the second part agrees that out of the monthly payments of two hundred dollars provided for in this article she will provide for the education and maintenance of said Leonora M. Gross. The obligation of the party of the first part to make the payments provided for in this article shall cease for a period of twelve calendar months, commencing February first, of any and every year following any year in

which the annual net income of the party of the first part shall have been less than the sum of $10,000. Provided, however, that such payments shall not cease, for such reason, until on or after February first, 1924. If the party of the first part shall desire to have this obligation to make the payments provided for in this article cease, as herein provided, he shall notify the party of the second part that his annual income in the preceding calendar year was less than the sum of $10,000 and shall accompany such notice with a copy of his last income tax return made to the United States Government, which copy of such return shall have attached thereto the oath of the party of the first part that it is a true copy.''

It is alleged in the complaint that plaintiff has duly performed all of the conditions of the said contract on her part to be performed, that the daughter Leonora M. Gross is unmarried and at all times since the making of said contract and now lives with the plaintiff, that pursuant to the said contract, the defendant had paid the sum of $200 per month up to and including March 1, 1925, that no other sums have been paid and that there is now due thereon the sum of $6,000 with interest.

By his answer the defendant denied due performance of the conditions of the contract by the plaintiff, admitted that Leonora was unmarried and still lives with the plaintiff, admits the payments alleged in the complaint, but denied that anything was due plaintiff under the terms thereof.

By a separate defense it is alleged that on or about October 1, 1924, defendant paid to the plaintiff $1200, being six months' payments on account of the contract, and that the defendant then informed the plaintiff that his income was then less than $10,000 for the previous year and he would be unable to continue said payments in accordance with the terms of the said contract and that the plaintiff then waived compliance with the remaining terms of said contract, to wit: A written notification of the defendant's election not to pay and the presentation of a verified copy of the defendant's income tax return; that at all times since said date defendant's income tax, as shown by his net income tax returns, have been less than $10,000.

As a further defense, the defendant alleges that since March 1, 1925, he has contributed for the education and

maintenance of the daughter a sum of money in excess of $2,000, and to that extent had relieved the plaintiff from the care of said child.

At the opening of the trial it was agreed that the cause should be considered as of date of March 1, 1928, without the necessity of filing amended pleadings.

The trial court found in favor of the plaintiff and rendered judgment in her favor for the sum of $7,079.28 with interest and costs. The defendant has appealed and brings the record here under the alternative method.

The court found against the defendant's plea of a waiver of the provisions of the contract relating to the notice that his net income was less than $10,000 and the waiver of the notice and service of a copy of the income tax returns, as required by the contract.

Upon these subjects the defendant testified that in October, 1924, he wrote a letter to the plaintiff in which he inclosed a check for the six months' period between October, 1924, and March, 1925; that in that letter he stated his inability to continue the payments commencing March 1, 1925. He further testified that he never received a demand from the plaintiff relating to the matter of his filing copies of his income tax returns for the years covered by the complaint; that in August, 1925, he had a personal interview with the plaintiff, that she mentioned that he had not filed a verified copy of her income tax return with her and that he told her it was a matter of public record, that he was advised it was unnecessary to file such statement but that if her attorneys wanted him to do so, he would file it; he further said he had been advised that the filing of a statement was unnecessary and that he accepted the advice.

The plaintiff testified that the first time defendant told her he could not make the payments as provided in the contract was in a conversation in August, 1925, when he said that his income was not $10,000 per year; that she then brought up the matter that he should have served papers on her, and he told her that she could go to the court and see the record any time. When the payments ceased she wrote him and he said he was unable to afford it, that she then came from France to Los Angeles to see about it and at that time he promised her that he would pay it shortly but he did not live up to said agreement. The plain-

tiff could not remember whether or not she had received a letter from the defendant that he was unable to continue the payments. In one part of her testimony she said that in the conversation with the defendant in August, 1925, when defendant told her that it was not necessary for him to send a copy of the income tax returns, she told him: "That it was up to you to send me that copy, showing that your income was not $10,000 a year."

The plaintiff also testified several times that she told the defendant he should have served her with a sworn and attested statement. That as to her future attitude thereon she said: "I upheld my statement that that should have been served, that it had not been, but that he should have done so; that it was not waived."

The foregoing is an epitome of the testimony upon this question. We think it is clear therefrom that the question presented is based upon a conflict and the court having determined the conflict, under well-settled rules of law, this court may not interfere with and must accept the findings of the court that notification of defendant's inability to pay, and the service of the income tax return were not made or waived.

It is also advanced as a ground for reversal of the judgment that the appellant's liability is conditional only upon the receipt by him of a net income of $10,000 or more during the preceding year; that the stipulation for the giving of notice and the service of copies of income tax returns are merely independent covenants and not a part of the condition. In support of the foregoing that the obligation of the defendant to pay is conditional, appellant cites section 1434 of the Civil Code, as follows: "An obligation is conditional, when the rights or duties of any party thereto depend upon the occurrence of an uncertain event."

In the case at bar, the obligation to pay was dependent for one thing upon the earning of the appellant. If that were all, we would have no doubt that it would have been incumbent upon the plaintiff herein to have alleged and proved that defendant's earnings in the year preceding his failure to pay according to the terms of the contract were at least $10,000 before she would have been entitled to have maintained this action. That is in principle the holding in *Van Buskirk* v. *Kuhns*, 164 Cal. 472 [Ann. Cas. 1914B,

932, 44 L. R. A. (N. S.) 710, 129 Pac. 587], cited by appellant, but the contract before us refers to the foregoing condition and says: "If the party of the first part (appellant) shall desire to have his obligation to make the payments provided for in this article cease, as herein provided, he shall notify the party of the second part that his annual income in the preceding calendar year was less than the sum of $10,000 and shall accompany such notice with a copy of his last income tax return made to the United States government, which copy of such return shall have attached thereto the oath of the party of the first part that it is a true copy."

It is clear that the appellant obligated himself to pay to respondent for additional support of the minor child of their marriage the sum of $200 per month. It is also clear that if he desired to have this obligation cease for any one year following the year when his income was less than $10,000, he could accomplish that purpose by giving the notice and filing the copy of his income tax return with the respondent.

The court found and, as we have already pointed out, the evidence is sufficient to sustain the finding that he did not give the notice, nor did he furnish the income tax return to relieve him from his obligation to pay.

It must be borne in mind that the payments required to be made by the contract were continuing ones, that is, from year to year, and the burden was by the contract itself placed upon the appellant, whenever he desired to take advantage of his income being less than $10,000 to notify the plaintiff and furnish the income tax returns for that year.

Our attention is called to the fact that the first paragraph of the contract recites the creation of a trust and that the income from the trust fund shall be paid to the party of the second part; also that paragraph 3 creates a condition that in the event the first party's income shall reach the sum of $20,000 per annum then he shall pay an additional $200 per month "and shall continue 'such additional payments' until he shall have paid to said party of the second part the amount which he shall not have paid under the terms of this article, because his annual net income shall have been less than the sum of $10,000".

It is also specifically provided in said paragraph that in any year following one in which his income does not amount to $20,000, he shall not be under obligation to pay the said additional sum. No provision is made in paragraph 3 for any notice or the filing of any income tax return to enable the appellant to take advantage where his income is less than $20,000 per annum.

It is argued from this that the omission to place such a provision in paragraph 3 shows that it was not considered by the parties as important. However, paragraph 2 of the contract is unambiguous and states clearly that the only way in which appellant could avail himself of the privilege of nonpayment was to give notice to the respondent and to file with said notice his income tax returns for the previous year. Counsel for appellant has cited many authorities distinguishing between conditions subsequent and precedent and independent covenants, but from our interpretation of the contract we are satisfied that said cases do not apply and the terms of the contract itself answer counsel's contention.

It is a further contention of the appellant that he was entitled to certain credits for payments made by him subsequent to March 1, 1925, for the support of his daughter. Two payments aggregating the sum of $700 and made payable to the plaintiff were credited by the court on the judgment. The remaining sums of money were sent by the defendant directly to the daughter and in most instances were made payable to her. Defendant did not notify the respondent that these items were credits on the contract, and as they were not sent to the plaintiff or made payable to her, nor was she notified of the payments being on the contract, we think the court was justified in not giving appellant credit for them, nor is it alleged in the complaint in direct terms they were payments on the contract.

We see no reversible error in the record. The judgment is affirmed.